### SIMEOLA v. LIPPARD–STEWART MOTOR SALES CO.

(Supreme Court, Appellate Term, First Department. January 7, 1916.)

SALES &—397—POWERS OF AGENT—EVIDENCE.

Evidence, in an action to recover the purchase price paid for a second-hand automobile, *held* insufficient to show that the seller was the agent of defendant in making the sale as to bind defendant to return the price on breach of warranty of the machine.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1136; Dec. Dig. &—397.]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by John Simeola against the Lippard-Stewart Motor Sales Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued November term, 1915, before LEHMAN, BIJUR, and FINCH, JJ.

Gallert & Heilborn, of New York City (Walter S. Heilborn, of New York City, of counsel), for appellant.

Palmieri & Wechsler, of New York City (Samuel Wechsler, of New York City, of counsel), for respondent.

BIJUR, J. Plaintiff sued for the return of $265, which he claimed to have paid to defendant as the purchase price of an automobile. As the learned judge below has made upon the judgment a notation, "I believe the plaintiff," the question presented on this appeal is whether the evidence of the plaintiff and the witnesses produced by him supports the judgment.

The complaint alleges the sale of the car to plaintiff by the defendant with a warranty that it was in good condition and would climb hills, the breach of that warranty, the rescission of the contract, and a tender back of the car. It also alleges that at the time of the purchase and at the time the complaint was served, March, 1915, plaintiff was a minor; that he did elect, and does elect, to rescind the sale, and has tendered the car back, and demands the return of the purchase price. The plaintiff came of age in April, 1915, and was substituted in place of his father, who had previously sued as his guardian ad litem.

---

&—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At the outset, I may suggest a serious doubt whether plaintiff has shown any cause of action based on rescission because of infancy. He does not claim ever to have notified the defendant that he was an infant until the service of his complaint in March, 1915, and the tender of the car, if any, with notification of rescission, was made some time in October, 1914. I find no case, nor does respondent cite one, which warrants a recovery of the purchase price upon a bare notice of rescission of the purchase without a statement to the vendor of the basis of the rescission. The point need not, however, be considered in view of the other conclusions at which I have arrived.

Plaintiff testifies, in substance, that on or about the 30th of September, 1914, in New Rochelle, where he resided, one Graham told him that he had a Cadillac car in good condition which he wanted to · sell to him. From this point on plaintiff persisted, over repeated objections, in testifying to conversations with Graham to the effect that Graham said that he represented the defendant. He made an appointment with Graham and met him in the office of defendant in New York City, apparently on October 1st. Graham then told him:

"I have a car, but I haven't got it here. But you come along with me, and I will take you to my own place."

Graham took him to a garage which plaintiff said, over similar objection, Graham told him belonged to defendant, showed him a car, and stated that it was in good condition and would climb hills. Thereupon plaintiff gave Graham a check of a third party for $25 made to plaintiff's order, which plaintiff indorsed in blank, on which appears merely the subsequent indorsement of Graham and indorsements showing that it was cashed apparently by Graham. Graham also gave plaintiff a receipt dated September 30th and signed in the name of the defendant by Graham. Although plaintiff testifies that Graham signed this receipt in defendant's office, he also says that after he paid the $25 he went home. On the next day he testifies that Graham brought him a contract which he signed, and says, in answer to a question of his counsel whether that was signed in the office of defendant:

"Yes. He came over to my place and he gave me that contract. * * *
Q. And he gave you the contract in their office? A. Yes, sir."

This contract is an order addressed to defendant, apparently on their order form, containing a guaranty that the car is in first-class running order and will climb hills, and signed by the plaintiff personally and by Graham personally. It is dated October 1st. Upon signing the contract, plaintiff says that he gave Graham a check for $200. The check is dated October 2d, drawn on the Huguenot Trust Company by plaintiff, and indorsed: "Lippard-Stewart Motor Sales Co., L. F. Bond, pay to J. A. Graham. J. A. Graham." There is not a scintilla of evidence in the case that the check was ever cashed, or that plaintiff paid it, or that it was charged to his account by the trust company. The car was not delivered, whereupon some days later plaintiff called at the office of defendant and saw Mr. Tinker, the assistant treasurer of the company, and "told him that I bought a car from the Lippard-Stewart Motor Sales Company. He said, 'From whom did you buy it?' And I told

him that I bought it from Mr. Graham. * * * He said, 'Well, Mr. Graham isn't here now, and we will see him about it when he comes in.'" The next day he and his father and their chauffeur called at the office of the defendant and saw Mr. Pelham, the president, who said "he would see about the car, and that car would be delivered to me O. K." As to this interview the father testifies:

"I said, 'Now, Mr. Pelham, what can you do?' and Mr. Pelham said: 'You take my word. I will help you on that.' And that is all he said."

Plaintiff testifies as to the first interview, "I brought a check with me just to show him (Tinker) that I had dealt with the company," and his father says that at the second interview Mr. Pelham urged and insisted that plaintiff should allow defendant to take a photograph of this check, which, after much urging, was finally done. Plaintiff claims thereafter to have called at the office of the company a number of times, and then says, without any explanation of how he got there, that he called at a garage, presumably the one at which he had seen the car, and there met Graham and Bond and one Roth, who seems to have been the proprietor of the garage. The car was there delivered to him, and he gave Graham a third check, this one being dated October 17th, drawn on the Huguenot Trust Company to the order of the defendant for $40. From the indorsements, this one appears (after having been certified by the Huguenot Trust Company) to have been cashed upon the indorsement: "Lippard-Stewart Motor Sales Co., J. C. Roth." At the same time plaintiff signed a receipt dated October 17th, reading:

"Received from Jos. L. Bond a Cadillac car as is. In signing this receipt, I agree to drop any proceedings against the Lippard-Stewart Motor Sales Company or Mr. Jos. L. Bond or Mr. John A. Graham. My signature releases all parties from further responsibility—on delivery but not on contract."

Thereupon plaintiff, his father, his chauffeur, and Graham, entered the car, and, after much difficulty and many breakdowns, Graham in the meantime leaving them, they succeeded in getting the car to New Rochelle.

Plaintiff continued to testify, saying that the next day he went to the defendant's office, saw Mr. Pelham, and told him that the car was perfectly useless; that it would not go. After unsuccessfully endeavoring to lead the plaintiff by three separate, improper questions as to whether he had offered to return the car, plaintiff's counsel managed to get the plaintiff's answer to the question: "Did you offer the car back? A. Yes, sir." To these questions due objection was taken. This practically concludes the material part of the plaintiff's case.

Plaintiff does not pretend to have proved, and does not, as I understand it, claim even now, that defendant received any of the moneys paid to Graham. There is no suggestion in plaintiff's proofs that the indorsements reading in the name of the defendant were made by any one authorized by or were in any way even known to it. (This apart from the fact that defendant has shown affirmatively that they were forgeries.)

As to the $200 involved, there is not the slightest basis for any judgment; but, even as to the balance, I do not see on what theory

the defendant can be held. Respondent scarcely contends that the general rule of agency is not applicable here to the effect that an agent has no authority to warrant unless such authority is expressly conferred or is usual in connection with the article sold. There is no testimony that even hints at the existence of either of these factors. Indeed, the only evidence that Graham represented the company in any way is an admission of defendant that he was at the time of this transaction one of its salesmen, and the defendant has affirmatively shown that its business consisted in the sale of new automobile trucks. Plaintiff does not even claim that he ever apprised the defendant in any way of the fact that the car had been sold to him with a warranty, the only paper which he showed defendant, according to his story, being the check for $200 which he says he took along a few days after he signed the contract, which he thought was with the company, in order to show that he had had a transaction with it.

Incidentally, it may be wondered, in view of the peculiar indorsements on this check, how he had possession of it early in October (in face of the uncontradicted testimony of the president of the Huguenot Trust Company in a deposition that plaintiff's account had not been balanced and the vouchers returned from October 2d until late in November), except on the theory that the check never was cashed.

Respondent seems to suggest some theory of ratification or adoption of Graham's apparently illegal act in indorsing this check for $200, and thus establishing by way of admission or ratification the agency of Graham to receive money on behalf of the defendant. But none of the statements testified to by plaintiff and his father as having been made by Tinker or Pelham suggest anything other than, first, that they would inquire about the matter and endeavor to help plaintiff in his difficulties; and, next, so far as the father's version of the second interview was concerned, that defendant must have told plaintiff that the indorsement on the check was forged, or something to that effect, as otherwise the request to take a photograph of the check would be utterly meaningless.

As matter of law, therefore, taking the testimony offered on behalf of plaintiff at its face value, as was apparently done by the learned judge below, I find no support for the judgment in favor of plaintiff for the amount awarded, or for any amount. It is not necessary therefore to pass on the question of the weight of evidence concerning which, however, the foregoing review thereof is sufficiently significant.

Judgment reversed, and new trial granted, with $30 costs to appellant to abide the event.

LEHMAN, J., concurring in result.